## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

Joni L. Brown,

|                          |                                |
| ------------------------ | ------------------------------ |
| Plaintiff                | No. 3:17-cv-02021              |
| v.                       | (Judge Richard P. Conaboy)     |

Nancy A. Berryhill,
Acting Commissioner of
Social Security,

                          Defendant

---

### MEMORANDUM

### I.   Procedural background.

We consider here the appeal of Plaintiff Joni Louise Brown
from an adverse decision of the Social Security Administration
("SSA") or ("Agency") on her application for Supplemental
Security Income Benefits ("SSI"). Plaintiff's claim, initially
filed on April 23, 2014, was denied at the administrative level
on June 25, 2014. Plaintiff then requested a hearing before an
Administrative Law Judge ("ALJ") and received such a hearing on
April 13, 2016. The ALJ issued an unfavorable decision on August
22, 2016 which was affirmed by the Appeals Council on September
7, 2017. The Appeals Council's affirmance constitutes a final
decision of the Agency and vests this Court with jurisdiction
pursuant to 42 U.S.C. § 405(g).

### II.  Testimony before the ALJ.

The Plaintiff testified at a hearing before ALJ Paula Garrety on April 13, 2016. Also present were Charles Rosamilia, Jr., her attorney, and Patricia Chilleri, a vocational expert ("VE"). Plaintiff's testimony may be summarized as follows.

Plaintiff was forty-five years of age on the date of her hearing. She has three children all of whom have reached adulthood. She lives with one of her daughters who she described as "learning disabled". The daughter receives SSI benefits and receives these checks in her own right. Previously, Plaintiff had been her daughter's representative payee. (R. 117-118).

Plaintiff does not drive and has never had a driver's license. When she needs to leave the house she depends on her mother for transportation. Plaintiff stated that she does not leave the house often because being in public makes her anxious. She last worked in 1997. She did try to go back to work briefly in 2002 but could not sustain that employment. Since 2002, her physical problems have gradually gotten worse despite several surgeries. (R. 118-119).

Plaintiff completed the tenth grade and subsequently earned a GED. She is five feet three inches tall and weighs approximately two hundred and fifteen pounds. She formerly weighed about 140 pounds and believes that her difficulty moving around has contributed to her substantial weight gain. Before her back symptomology she did "all sorts of stuff" such as

photography, nature hikes, dancing, and shopping at flea markets. She no longer does these things because she has difficulty staying on her legs for more than thirty to forty-five minutes before she becomes shaky and her legs begin to swell. She stated that she can sit for forty-five minutes to an hour and then must change position due to swelling in her legs. She believes the swelling is related to her lower back problems. She was not able to estimate how long she would be capable of sitting and standing in an eight hour work day because she is on medications that make her tired and sometimes cause her blood pressure to spike. Some days are worse than others. She does not believe that she could work even as much as five hours in an eight hour workday. (R. 119-120).

She has difficulty walking from her front door to the sidewalk and back -- a distance of less than half a block. She must sit down to rest afterward. She does not experience much of a problem manipulating things with her hands but sometimes experiences hand numbness. She stated that she had been assaulted by a boyfriend in 1997 and that the damage incurred ultimately made two back surgeries, one cervical and one lumbar, necessary. Before the surgeries Plaintiff was experiencing extreme pain in her lower back, hips, legs, neck, and down her arms into her hands. Her neck surgery "made things a little better". However she still experiences pain in her left hand and some numbness in

her right hand. Also, she began to experience headaches after her neck surgery. These headaches are severe enough that she does not do much around the house and depends on her daughter and her boyfriend to do such things as take out the trash, do the laundry, make the beds, and shop for groceries. (R. 120-122).

Lower back surgery in 2013 actually made her low back and leg symptomology worse and further impaired her ability to function. She does not get much sleep. She naps downstairs in the afternoon and early evening and then her daughter helps her get up to her third floor bedroom. She sleeps sporadically and generally wakes up before 5:00 a.m. and, as a result, she is tired all day. This fatigue and her social anxiety are such that she rarely leaves the house. Her back pain also limits her and she finds that even minimal physical activity exacerbates back pain that radiates down her legs. R. 123-125).

Plaintiff also relates that she feels depressed and believes that her depression stems from the assault she suffered years ago. She had gone for a time for mental health therapy and, while in therapy, was prescribed medication for her anxiety. She was told by a therapist that she did not need to go back to therapy as long as she stayed on her medication. Plaintiff also alluded to osteoarthritis which affects her knees, fingers, wrists, elbows, shoulders, and hips. When this condition is exacerbated she goes to the hospital for an injection to deal with the

inflammation. She also uses heat and ice to alleviate her symptoms of osteoarthritis. (R. 125-126).

Also testifying was VE Patricia Chilleri. Ms. Chilleri testified that she was familiar with the rules and regulations governing disability under the Social Security Act and that she had reviewed the exhibits that had been introduced and also heard Plaintiff's testimony. Her vocational testimony was entered without objection from Plaintiff's attorney.

The ALJ phrased a hypothetical question to Ms. Chilleri in which she was asked to assume a person of Plaintiff's age, education, and work-history who was able to perform sedentary or light work that did not involve detailed or complex instructions and was confined to routine, competitive tasks and no more than occasional contact with the public. Under these assumptions, Ms. Chilleri identified sedentary occupations (including document preparer, sorter, sampler, tester, inspector, and bench worker) and light exertional occupations (including hand packer and laundry worker/folder) that would be within the hypothetical claimant's functional capacities. (R. 128-129).

Upon questioning by the Plaintiff's attorney, Ms. Chilleri stated that if the claimant was unable to sit, stand, or walk for more than two hours in an eight hour day and could lift no more than five pounds, she would be unable to perform any of the jobs that had been identified. When Plaintiff's attorney asked whether

marked limitations in understanding and carrying out simple instructions coupled with agoraphobia and panic attacks as described by Plaintiff's doctor would preclude Plaintiff from performing any of the jobs the VE had identified, Ms. Chilleri responded that, if the Plaintiff was unable to maintain consistency and persistence for at least twenty percent of an eight hour work day, she would be unemployable. (R. 129-130).

**III.   Medical Evidence.**[1]

### a. Clinton Medical Associates.

Dr. Greenberg of Clinton Medical Associates saw Plaintiff on four occasions between March 4, 2014 and May 20, 2014. On March 4, 2014 Dr. Greenberg's office note refers to low back pain at L5-S1 and headaches. He recorded Plaintiff's weight at 188 pounds and her blood pressure at 122/74. He noted that he would follow up with Plaintiff after surgery. (R. 565).

On March 7, 2014, Plaintiff called Dr. Greenberg with complaints of cold symptoms and back pain. Dr. Greenberg prescribed Hydrocodone and a cough medication. (R. 564).

On April 4, 2014, Plaintiff presented with complaints of chest tightness, anxiety, and low back pain post-status lumbar

---

[1] Plaintiff had previously requested a closed period of disability from September 7, 2006 through February 6, 2014. Claimant had thereafter acknowledged that she was capable of working as of February 6, 2014. Accordingly, the only relevant medical evidence is that which postdates February 6, 2014.

fusion. Plaintiff's weight was recorded as 184.8 pounds and her blood pressure was measured at 132/78. (R. 563).

Between April 15, 2014 and April 23, 2014 Plaintiff called Dr. Greenberg on three occasions to discuss her dosage of Adidex (a weight control medication), to complain of feeling odd and experiencing back pressure, and to report that she felt better after taking Ativan (a sedative for anxiety). (R. 562).

On April 28, 2014, Plaintiff called to complain about an appointment being cancelled and demanded that her medications be refilled and x-rays of her back be arranged. (R. 561).

On April 30, 2014, Plaintiff was seen in Dr. Greenberg's office and complained of constipation and concern about the hardware in her back. (R. 560). Finally, on May 20, 2014, Dr. Greenberg saw Plaintiff for the last time that is documented in the record. His office notes of that day are largely illegible but do indicate that Plaintiff was status post L5-S1 fusion with complaints of a burning feeling on the left side of her back. Dr. Greenberg also indicated that she could not lift more than five pounds on a repetitive basis.(R. 558).

Dr. Greenberg executed two identical letters dated August 6, 2015 and July 1, 2016 (R. at 793 and 824 respectively) in which he characterized Plaintiff as "totally disabled". The record also includes a functional capacities form completed by a Dr. Herberg, an associate of Dr. Greenberg, which assesses that Plaintiff:

could not sit, stand, or walk for more than a total of three hours in an eight hour workday; could occasionally lift up to five pounds and never lift more than five pounds; and that Plaintiff had marked limitations in her ability to carry out complex instructions and in her ability to interact with the general public, co-workers, and supervisors. These behavioral limitations were attributed to agoraphobia and panic attacks. (R. 806-808). There is no indication in the record that Dr. Herberg actually examined the Plaintiff or performed any clinical tests.

**b. Dr. John Sefter.**

Dr. Sefter followed Plaintiff after she underwent cervical surgery on April 13, 2015. This surgery was performed to address nerve root irritation and degenerative changes at C5-C6. (R. 795). On April 20, 2015. Dr. Sefter characterized Plaintiff as totally disabled but stated that "given her history and the type of surgery she had performed, she may be restricted in her activities of daily living for to six months." (R. 791). On April 24, 2015, Dr. Sefter saw Plaintiff on follow-up and noted that she was doing well, that her wound was clean and dry, that she had 5/5 strength with good sensation and motor ability, that her x-rays were excellent, and that she was experiencing a "perfect recovery thus far." (R. 794). Despite these positive observations, as of April 24, 2015, Dr. Sefter characterized Plaintiff as disabled. This characterization was not surprising

inasmuch as his progress note from four days earlier had indicated that he anticipated she would require a six month recovery period. The record contains no further comment from Dr. Sefter after April 24, 2015.

**c. Dr. Justine Magurno.**

Dr. Magurno saw Plaintiff on June 10, 2016 and performed an independent medical examination at the request of the Bureau of Disability Determination. Plaintiff complained of pain in her lower back, hips, legs, neck, left shoulder, and the outsides of her arms. She presented with a cane and reported that she had had two spinal surgeries, one on her lower back and one on her neck. She related that her neck had improved since her cervical surgery but that she still had pain to touch on her arms. This pain was worse on the left that on the right. (R. 811).

Dr. Magurno observed that Plaintiff was not in acute distress. He characterized her gait as normal and noted that she could toe walk with difficulty, stand on her right heel, fully squat, that her stance was normal, and that she was not in need of any help getting on or off the examination table and able to rise from her chair with no difficulty. (R. 812-13). Dr. Magurno's physical examination revealed that straight leg-raising was positive on the right at sixty degrees, but that a seated straight leg-raising test was negative. Dr. Magurno noted no joint deformity, that her joints were non tender, that her deep

tendon reflexes were equal in all extremities, and that Plaintiff
had no sensory deficits. Testing for upper extremity strength
indicated that Plaintiff had bicep strength 5/5, triceps strength
4/5, wrist strength 5/5 and that lower extremity strength was 5/5
bilaterally. No muscle atrophy was present and Plaintiff's hand
and finger dexterity was intact, her grip strength was 5/5
bilaterally, and she was able to tie a bow normally. Testing for
upper extremity strength revealed normal right shoulder abduction
and an inability to test on the left due to anticipated pain in
Plaintiff's left arm. (R. 813-14). Dr. Magurno completed a
Functional Capacities Report assessing Plaintiff's ability to do
work-related activities. Dr. Magurno estimated that Plaintiff
could lift up to fifty pounds occasionally, carry up to twenty
pounds frequently and could sit for a total of six hours in an
eight hour workday, stand for a total of six hours in an eight
hour workday, and walk for a total of six hours in an eight hour
workday. (R. 815-16). Dr. Magurno assessed that Plaintiff was
capable of climbing stairs and ramps frequently, should never
climb ladders or scaffolds, could balance and crouch
occasionally, could stoop, kneel, and crawl frequently, could
tolerate no exposure to unprotected heights or vibration, could
tolerate exposure to moving mechanical parts frequently, could
operate a motor vehicle continuously, and that Plaintiff could
tolerate exposure to humidity, dust, odors, pulmonary irritants,

extreme cold and heat, and noise. (R. 818-19). Dr. Magurno also assessed that Plaintiff could successively perform activities such as shopping, traveling without a companion, ambulating without use of an assisted device, walking one block at a reasonable pace on rough or uneven surfaces, using public transportation, climbing a few steps at a reasonable pace with the use of a single hand rail, preparing simple meals, and caring for her own hygiene. (R. 820).

IV. **ALJ Decision:**

The ALJ's decision (Doc. 12-1) was unfavorable to Plaintiff. It included the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since April 23, 2014, the date the instant application was filed.

2. The claimant has the following severe impairments: cervical and lumbar degenerative disc disease, status post lumbar and cervical surgeries, bilateral knee degenerative joint disease, ADHD, generalized anxiety disorder, and depression.

3. The claimant does not have an impairment or combination of impairments that meets

or medical equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. 416.920(d). 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform both sedentary and light work as defined in 20 C.F.R. 416.967(b)except that she is unable to perform work involving detailed or complex instructions. She is limited to performing work involving routine and repetitive tasks with few work changes and no more than occasional interaction with the public.

5. The claimant has no past relevant work.

6. The claimant was born on November 21, 1970 and was forty-three years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since April 23, 2014, the date the application was filed.

## V. Disability Determination Process.

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[2] It is necessary for

---

[2] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The Act further provides that an individual is disabled

*(footnote continued on next page)*

the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work.  20 CFR §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age,

---

only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

education, and work experience can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at the fifth step of the process when the ALJ found there are jobs that exist in the national economy that Plaintiff is able to perform. (Doc. 12-1 at 12).

## VI.  Standard of Review.

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla".  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise.  A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed

by other evidence--particularly certain
types of evidence (e.g., that offered by
treating physicians)--or if it really
constitutes not evidence but mere
conclusion. *See Cotter*, 642 F.2d at 706
("Substantial evidence" can only be
considered as supporting evidence in
relationship to all the other evidence in
the record.") (footnote omitted). The
search for substantial evidence is thus a
qualitative exercise without which our
review of social security disability cases
ceases to be merely deferential and becomes
instead a sham.

710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary

to analyze all evidence. If she has not done so and has not

sufficiently explained the weight given to all probative

exhibits, "to say that [the] decision is supported by

substantial evidence approaches an abdication of the court's

duty to scrutinize the record as a whole to determine whether

the conclusions reached are rational." *Dobrowolsky v. Califano*,

606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court

clarified that the ALJ must not only state the evidence

considered which supports the result but also indicate what

evidence was rejected: "Since it is apparent that the ALJ cannot

reject evidence for no reason or the wrong reason, an

explanation from the ALJ of the reason why probative evidence

has been rejected is required so that a reviewing court can

determine whether the reasons for rejection were improper."

*Cotter*, 642 F.2d at 706-07.  However, the ALJ need not undertake an exhaustive discussion of all the evidence.  *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).  "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated." *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted).  Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the

decision is supported by substantial evidence, a claimed error may be deemed harmless. *See*, *e.g.*, *Albury v. Commissioner of Social Security*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review."). Finally, an ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## VII. Discussion

### A. General Considerations

At the outset of our review of whether the ALJ has met the substantial evidence standard regarding the matters at issue here, we note the Third Circuit has repeatedly emphasized the special nature of proceedings for disability benefits. *See Dobrowolsky*, 606 F.2d at 406. Social Security proceedings are not strictly adversarial, but rather the Social Security Administration provides an applicant with assistance to prove his claim. *Id.* "These proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act." *Hess v. Secretary of Health, Education and Welfare*, 497 F. 2d 837, 840 (3d Cir. 1974). As such, the agency must take extra

care in developing an administrative record and in explicitly

weighing all evidence. *Dobrowolsky*, 606 F.2d at 406. Further,

the court in *Dobrowolsky* noted "the cases demonstrate that,

consistent with the legislative purpose, courts have mandated

that leniency be shown in establishing the claimant's disability,

and that the Secretary's responsibility to rebut it be strictly

construed." *Id.*

**B. Plaintiff's Allegations of Error.**

**1. Whether the ALJ failed to accord appropriate deference
to the opinion of Plaintiff's treating physician?**

Plaintiff correctly asserts that the opinion of a treating

physician is generally entitled to great deference under the

Agency's own rules and the caselaw of the Third Circuit. This is

more particularly true when there is a long, longitudinal record

created by the treating physician that documents his treatment

of the patient. Morales Apfel, 225 F. 3d 310,317 (3d Cir. 2000).

Indeed, when a treating physician's opinion regarding the

severity of a claimant's impairments "is well-supported by

medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial

evidence in the case record, we (the SSA) will give it

controlling weight." 20 C.F.R. § 401.1527(c)(2). Yet, it is also

the case that, where competing medical evidence exists, it is

within the ALJ's authority to choose which medical evidence to

credit and which to reject as long as there is a rational basis for the decision. *Plummer v. Atfel* 186 F3d 422,429 (3d Cir. 1999). The ALJ may even elevate the opinion of a non-treating, non-examining physician or non-medical source over that of a treating physician in an appropriate case. Morales, supra, at 317; see also 20 C.F.R. § 404.1527(f)(1).

In this case, Dr. Greenberg, a treating physician upon whom Plaintiff places her principal reliance, saw Plaintiff on only four occasions after February 7, 2014, her alleged onset of disability date. On these occasions Dr. Greenberg's office notes are abbreviated, lacking in detail, and, to a significant extent, illegible. The Court finds no evidence in the record, and Plaintiff's counsel certainly does not direct the Court's attention to any, that Dr. Greenberg saw Plaintiff after May 20, 2014. Yet, on August 6, 2015, some fourteen months after he last examined Plaintiff, Dr. Greenberg provided a cryptic letter describing Plaintiff as "totally disabled". (R. 793). In July of 2016, some twenty-five months after he last saw Plaintiff, Dr. Greenberg forwarded the same letter verbatim with a revised date. (R. 824). Significantly, the first of these letters preceded Plaintiff's cervical surgery in May of 2015. Dr. Sefter noted that that surgery had produced positive results with an estimated six month recovery period during which Plaintiff would be disabled. (R. 791-794).

Given the fact that Dr. Greenberg's treatment of Plaintiff did not extend for more than three months into her alleged period of disability, and given the fact that his office notes of his sessions with Plaintiff from February through May of 2014 lacked detail and include no mention of "clinical and laboratory diagnostic techniques", the ALJ reasonably concluded that his opinion was not entitled to controlling weight. (ALJ Decision, Doc. 12-1 at 11; see also 20 C.F.R. § 401.1527(c)(2)).

The ALJ elected to attach great weight to a medical report prepared by Dr. Justine Magurno on June 10, 2016 (R. 811-814). Dr. Magurno took a history from Plaintiff and physically examined her at that time. On the basis of this examination, Dr. Magurno completed a Medical Source Statement that assessed Plaintiff's physical ability to do work-related activities and a range of motion assessment. (R. 815-823). In short, Dr. Magurno's assessment easily supports the ALJ's conclusion (Doc. 12-1 at 6) that Plaintiff has the residual functional capacity to perform both sedentary and light work with further limitation as described by the ALJ and approved by the vocational expert.

Due to the above-referenced shortcomings of the medical evidence upon which Plaintiff relies, this Court cannot conclude that the ALJ unreasonably subordinated it to what must be regarded as substantial evidence provided by Dr. Magurno's more detailed

and more recent assessment. Accordingly, Plaintiff's assignment of error on this point must be rejected.

## VIII. Conclusion.

For the reasons cited above, Plaintiff's assignment of error is rejected and the decision of the Agency will be affirmed. The Court further determines that the Agency's decision was supported by substantial evidence. An Order consistent with this determination will be filed contemporaneously.

**BY THE COURT,**


**S/Richard P. Conaboy**
**Richard P. Conaboy**
**United States District Judge**

**Dated: June 21, 2018**